# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **JACK VENTON VENABLE JR ET AL** | **CASE NO.  6:16-CV-00241 LEAD** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SCHLUMBERGER LTD ET AL** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

# MEMORANDUM RULING

Presently before the Court are the (1) Motion for Summary Judgment as to Issues of Good Faith and Willfulness [ECF No. 99] filed by Smith International, Inc.; (2) Motion for Summary Judgment on the Claims of Jack Venable and Brent Kemp [ECF No. 100] filed by Smith International, Inc.; (3) Plaintiffs' Objection to, and Motion to Strike, Smith's Improper Summary Judgment Evidence [ECF No. 110]; (4) Motion for Partial Summary Judgment as to Salary Basis and Smith's Exemption Defenses [ECF No. 119] filed by Plaintiffs; and (5) Motion for Partial Summary Judgment as to Smith's Good Faith Defense [ECF No. 121] filed by Plaintiffs.[1]

# I.
## BACKGROUND

This Collective Action Complaint was filed on February 22, 2016 by Jack Venton Venable, Jr. ("Venable") and William Aguirre ("Aguirre") against Schlumberger Limited (Schlumberger N.V.) fka Smith International, Inc. ("Smith"). The complaint alleges that Smith misclassified plaintiffs and all "Reamer Hands" as exempt from overtime requirements and sought to recover

---

[1] This Memorandum Ruling applies to the corollary motions filed in the following related and consolidated cases: 6:17-cv-860; 6:19-cv-238; 6:19-cv-239; and 6:19-cv-240.

unpaid overtime wages, liquidated damages, attorney fees and costs under the Fair Labor Standards Act ("FLSA").[2]

On July 3, 2017, the Court conditionally certified the action as a collective action pursuant to 29 U.S.C. §216(b).[3] On July 5, 2017, the Court severed Mr. Aguirre's claim from the collective action proceeding into a separate individual action.[4] On October 25, 2017, Plaintiffs filed Notice of Filing Consent in which Karl Drobish ("Drobish"), Brent K. Kemp ("Kemp"); Charles Myers ("Myers"); and Joel Brent Story ("Story") consented to join the Collective Action. On February 25, 2019, the Court granted a joint motion to sever the claims of Drobish, Myers and Story into separate individual actions.[5] This resulted in the present Collective Action, with Venable and Kemp as plaintiffs, and four separate individual actions by Aguirre, Drobish, Myers and Story. On August 24, 2021, the Court consolidated the five proceedings for all purposes except for trial.

Each of the Plaintiffs were employed by Smith as a DTR Field Specialist, which was commonly referred to as a "reamer hand" or simply a "reamer". As reamers, Plaintiffs' primary duty was to supervise Smith's customers' use of the "underreaming" tool.[6] Specifically, reamers: 1) supervised the rig crew as they attached and removed the reamer tool to/from the drill string, 2) monitored and oversaw the reaming operation, 3) provided advice and suggestions to the driller on how to operate and use the underreaming tool, and 4) ensured that the Driller did not operate the underreaming tool in a manner that would damage the well or the tool.[7]

---

[2] Collective Action Complaint, ECF No. 1, ¶ 5.
[3] ECF No. 29.
[4] ECF No. 30.
[5] ECF No. 59.
[6] Louback Depo, ECF No. 114-1, at pp. 43-44, 58; Declaration of Jack Venable, ECF No. 100-6, at ¶ 8; Kemp Depo., ECF No. 114-3, at pp. 43-44, 58; Aguirre Depo., at ECF No. 114-4, at pp. 91:11-15; 109:10-14; 120:8-23; Drobish Depo., ECF No. 114-5, at 91:7-13; Myers Depo., ECF No. 114-6, at p. 69:12-22; Story Depo., ECF No. 114-7, at 53:1-14.
[7] *Id.*

Plaintiffs did not actually operate the underreaming tool; rather the Driller was the individual at the controls of and operating the drill string.[8]

Among the affirmative defenses asserted by Smith are (1) that Plaintiffs are exempt from overtime compensation because they fall under the highly compensated employee ("HCE") exemption since they are paid on a salary basis and their compensation is in excess of $100,000;[9] and (2) that if Smith improperly classified Plaintiffs, any violation was not willful, and Smith acted in good faith.[10] The present motions address these two defenses.

## II.
### LAW AND ANALYSIS

### A.    Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[11] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[13] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[14]

---

[8] *Id.*
[9] Answer to Complaint, ECF No. 4, Twenty-Second Affirmative Defense, p. 14.
[10] *Id.*, Fifth Affirmative Defense, p. 11.
[11] Fed. R. Civ. P. 56(a).
[12] *Id.*
[13] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[14] *Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[15] "Credibility determinations are not part of the summary judgment analysis."[16] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[17]

### B.      Highly Compensated Employee Exemption.

### 1. The Exemption.

The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."[18] If the employer claims "that the suing employee is exempt from the overtime requirement," then the employer "has the burden of proving that the employee falls within the claimed exempted category."[19] Congress has authorized the Secretary of Labor to promulgate regulations exempting "bona fide executive, administrative, [and] professional" employees from overtime.[20] Under that authority, the Secretary of Labor has

---

[15] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).

[16] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

[17] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[18] 29 U.S.C. § 207(a)(1).

[19] *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir.2001).

[20] 29 U.S.C. § 213(a)(1).

exempted "highly compensated" employees[21] as well as more modestly paid "executive," "administrative," and "professional" employees.[22]

The Fifth Circuit has recently explained that:

> To fall within any of these exemptions, however, three conditions must be met: First, the employee must meet certain criteria concerning the performance of executive, administrative, and professional duties. Second, the employee must meet certain minimum income thresholds. Finally, the employee must be paid on a "salary basis." And although the duties criteria and income thresholds vary from exemption to exemption, the regulations apply the same salary-basis requirement to all four exemptions. See *id.* § 541.100(a)(1) (applying the salary-basis test to executive employees); *id.* § 541.200(a)(1) (administrative employees); *id.* § 541.300(a)(1) (professional employees); *id.* § 541.601(b)(1) (highly compensated employees).
>
> So earning a certain level of income is necessary, but insufficient on its own, to avoid the overtime protections of the FLSA. The employee must also be paid on a salary basis, as well as perform certain duties. And unless those tests are met, the employee is "not exempt ... no matter how highly paid they might be." Id. § 541.601(d) (emphasis added) (specifying various professions that are subject to overtime regardless of the amount of income earned).[23]

### 2. The Terms of Plaintiffs' Compensation.

Here, Venable was paid on a salary basis and received a guaranteed base salary that was not subject to reduction based on the quality or quantity of work.[24] Venable's annual salary was $56,700.00 (or $1,909.38 per week) from February 2013 through August 2013, $58,450.00 (or $1,124.04 per week) from August 2013 through August 2014, and $60,250.00 (or $1,164.42 per week) from August 2014 through September 2015 when Venable's employment with Smith ended.[25] Smith paid Venable his base salary every week regardless of the number of hours Venable worked.[26] Venable received job bonuses for days he provided services to Smith's customers on

---

[21] 29 C.F.R. § 541.601.
[22] *Id.* §§ 541.100, 541.200, 541.300.
[23] *Hewitt v. Helix Energy Solutions Group, Inc.,* 15 F.4th 289, 290-291 (5th Cir. 2021).
[24] ECF No. 100, Exhibit A, pp. 37-39, 52-53.
[25] *Id.* at p. 39.
[26] *Id.* at p. 53.

their drilling rigs.[27] In 2013, Venable's total annual compensation was approximately $300,060.64.[28] In 2014, Venable's total annual compensation was approximately $319,264.42.[29] For the approximately nine (9) month period during which he was employed in 2015, Venable's total annual compensation was approximately $168,787.67.[30]

Kemp was paid on a salary basis during his employment with Smith and received a guaranteed base salary that was not subject to reduction based on the quality or quantity of work.[31] Kemp's annual salary was $54,700.00 (or $1,051.92 per week).[32] Smith paid Kemp his base salary every week regardless of the number of hours Kemp worked.[33] Kemp received job bonuses for days he provided services to Smith's customers on their drilling rigs.[34] For 2014, Kemp's total annual compensation was approximately $214,044.61.[35] For 2015, Kemp's total annual compensation was approximately $208,050.10.[36] For 2016, Kemp's total annual compensation was approximately $143,600.10.[37] For 2017, Kemp's total annual compensation was approximately $149,196.25.[38] For 2018, Kemp's total annual compensation was approximately $165,732.12.[39]

Aguirre was paid on a salary basis during his employment with Smith, which was a guaranteed base salary that was not subject to reduction based on the quality or quantity of work or the number of hours worked, even if he did not work at all.[40] Aguirre's annual salary was

---

[27] *Id*. at p. 54.
[28] *Id*. at p. 57.
[29] *Id*. at pp. 58-59.
[30] *Id*. at p. 60.
[31] ECF NO. 100, Exhibit C, pp. 26-27.
[32] *Id*. at p. 20.
[33] *Id*. at p. 27.
[34] *Id*. at p. 30.
[35] *Id*. at pp. 32-35.
[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] *Id*.
[40] ECF No. 79 (in case 6:17-cv-860), Exhibit 3, pp. 71-72.

$56,600.00 (or $2,176.92 per week) from May 2012 through August 2013, $58,300.00 (or $2,242.31 per week) from August 2013 through August 2014, and $60,050.00 (or $2,309.62 per week) from August 2014 through December 2015 when Aguirre's employment with Smith ended.[41] Aguirre received non-discretionary job bonuses for days he provided services to Smith's customers on their drilling rigs.[42] In 2013, Aguirre's total annual compensation was approximately $253,599.60.[43] In 2014, Aguirre's total annual compensation was approximately $279,323.54.[44] For the approximately eleven (11) month period during which he was employed in 2015, Aguirre's total annual compensation was approximately $266,868.13.[45]

Drobish was paid on a salary basis during his employment with Smith and received a guaranteed base salary that was not subject to reduction based on the quality or quantity of work.[46] Drobish's annual salary was $68,650.00 (or $1,320.19 per week) from October 2014 through September 2015.[47] Smith paid Drobish his base salary every week regardless of the number of hours Drobish worked.[48] Drobish received his base salary for weeks in which he did not work at all.[49] Drobish received job bonuses for days he provided services to Smith's customers on their drilling rigs.[50] In 2014, Drobish's total annual compensation was approximately $164,880.31.[51] For the approximately nine (9) month period during which he was employed in 2015, Drobish's total annual compensation was approximately $142,644.73.[52]

---

[41] *Id.*, Exhibit 4.
[42] *Id.*, Exhibit 3, pp. 72-73.
[43] *Id.* at pp. 74-75.
[44] *Id.* at pp. 75-76.
[45] *Id.* at p. 76.
[46] ECF No. 91 (in case 6:19-cv-238), Exhibit A, p. 36.
[47] *Id.* at p. 39.
[48] *Id.* at p. 37.
[49] *Id.* at pp. 36-37.
[50] *Id.* at p. 39.
[51] *Id.* at p. 117.
[52] *Id.*, Exhibit 7.

Myers was paid on a salary basis during his employment with Smith and received a guaranteed base salary that was not subject to reduction based on the quality or quantity of work.[53] Myers' annual salary was $52,400.00 (or $1,007.69 per week).[54] Smith paid Myers his base salary every week regardless of the number of hours Myers worked.[55] Myers received job bonuses for days he provided services to Smith's customers on their drilling rigs.[56] In 2014, Myers' total annual compensation was approximately $282,457.88.[57] For the approximately nine (9) month period during which he was employed in 2015, Myers' total annual compensation was approximately $145,526.84.[58]

Story's annual salary was $52,600.00 (or $1,011.54 per week) from September 2014 through October 2016 when Story's employment with Smith ended.[59] Smith paid Story his base salary every week regardless of the number of hours Story worked.[60] Story additionally received job bonuses for days he provided services to Smith's customers on their drilling rigs.[61] In 2014, Story's total annual compensation was approximately $348,427.95.[62] In 2015, Story's total annual compensation was approximately $211,950.08.[63] For the approximately nine (9) month period during which he was employed in 2016, Story's total annual compensation was approximately $144,349.27.[64]

---

[53] ECF No. 89 (in case 6:19-cv-239), Exhibit A. pp. 26-27.
[54] *Id*. at pp. 27-28.
[55] *Id*. at pp. 26-27.
[56] *Id*. at p. 19.
[57] *Id*. at p. 31.
[58] *Id*. at pp. 32-33.
[59] ECF No. 87 (in case 6:19-cv-240), Exhibit B.
[60] *Id*., Exhibit A, pp. 33-34.
[61] *Id*. at p. 34.
[62] *Id*. at pp. 37-38.
[63] *Id*. at pp. 38-39.
[64] *Id*. at pp. 39-40.

3.      **Salary Basis Requirement.**

In *Hewitt*, the Fifth Circuit addressed whether an employee who was paid solely on a daily rate could satisfy the requirements of an HCE without satisfying the salary basis requirement. There, the parties conceded that the plaintiff met the duties requirement and the income thresholds but disputed whether the salary basis requirements must be met—specifically the guaranteed minimum component. The FLSA and its regulations define salary as compensation paid "on a weekly, or less frequent basis," "without regard to the number of days or hours worked."[65] If an employee's wages are computed on the basis of a daily rate, certain criteria must be met, namely:

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.[66]

In *Hewitt*, the Fifth Circuit concluded that, since the plaintiff's compensation was based solely on a daily rate, this regulation applied.[67] Further, since the plaintiff was not guaranteed at least the minimum weekly requirement, the HCE exemption failed.[68]

Plaintiffs in the present case argue that *Hewitt* is dipositive in the present case. They argue that, although Plaintiffs meet the guaranteed minimum requirement, they do not meet the "reasonable relationship" requirement found in the same regulation. Smith claims that the "reasonable relationship" requirement is not required based upon the facts of the present case. The Court agrees.

---

[65] 29 C.F.R § 541.602(a) & (a)(1).
[66] *Id.* § 541.604(b).
[67] 15 F.4[th] 289.
[68] *Id.*

In *Hewitt*, the plaintiff's income was computed solely on the basis of a daily rate.[69] The defendant in that case argued that the day rate paid to the plaintiff exceeded the required weekly minimum and thus no further analysis was required. The Fifth Circuit disagreed, relying on the fact that there was no guaranteed minimum requirement.[70] Here, the Plaintiffs are paid under a hybrid compensation structure. Specifically, they are each paid an annual salary which is not subject to reduction regardless of the numbers of hours or days worked and that salary more than satisfies the requisite guaranteed minimum weekly salary requirement. They are also given additional compensation of a day rate paid for any day in which they are present on a customer's rig. This day rate compensation accounts for the majority of each Plaintiffs' total compensation.

The distinction between the compensation structure in the current case and that found in *Hewitt* is significant. Based upon the compensation structure in the present case, the Plaintiffs' pay is calculated "on a weekly, or less frequent basis"[71] and is not pay "computed on…a daily…basis."[72] The significance of this distinction was addressed by the Fifth Circuit when it explained that the *Hewitt* ruling was not in conflict with First[73] and Second[74] Circuit rulings on the issue:

> But there is no actual conflict here. That is for one simple reason that should be apparent from the face of the regulations: *Litz* and *Anani* involve pay calculated "on a weekly, or less frequent basis" (29 C.F.R. § 541.602(a))—and not pay "computed on ... a daily ... basis" (§ 541.604(b)). *See Litz*, 772 F.3d at 2 (employees were "guaranteed a minimum weekly salary of $1,000 *whether they bill[ed] any hours or not*") (emphasis added); *Anani*, 730 F.3d at 148 (employee's "base weekly salary was guaranteed, i.e. to be paid *regardless of the number of hours ... actually worked*") (emphasis added).

---

[69] *Id.*, at 292.
[70] *Id.*, at 298.
[71] 29 C.F.R. § 541.602(a).
[72] *Id.* § 541.604(b).
[73] *Litz v. Saint Consulting Group, Inc.*, 772 F.3d 1 (1st Cir. 2014).
[74] *Anani v. CVS RX Services, Inc.*, 730 F.3d 146 (2nd Cir. 2013).

> Indeed, the Sixth Circuit has already distinguished *Litz* and *Anani* on precisely this textual ground. As that court explained, "*Anani* and *Litz* involved plaintiffs who ... were undisputedly guaranteed weekly base salaries above the qualifying level." *Hughes*, 878 F.3d at 189–90 (emphasis added).[75]

Moreover, the fact that the Plaintiffs were paid additional compensation by Smith does not defeat

the HEC exemption. Indeed, the FLSA regulations address this:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $684 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $684 each week paid on a salary basis. Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.[76]

For the foregoing reasons, the Court concludes that the Plaintiffs' compensation satisfies the

salary-based requirement of the HEC exemption.

### 4.    Job Duties Requirement.

Under the FLSA, an employee is exempt under the highly compensated category if he or

she (1) is annually compensated at least $100,000; (2) "customarily and regularly performs any

one or more of the exempt duties or responsibilities of an executive, administrative or professional

employee;"[77] and (3) has within his or her primary duties the performing of office or non-manual

work.[78] The applicable regulation also states that the "high level of compensation" that the HCE

exemption requires is itself "a strong indicator of an employee's exempt status, thus eliminating

---

[75] *Hewitt*, 15 F.4th at 297.
[76] 29 C.F.R. § 541.604(a).
[77] 29 C.F.R. § 541.601(a).
[78] 29 C.F.R. § 541.601(d).

the need for a detailed analysis of the employee's job duties."[79] The Fifth Circuit has explained the job duties requirement of the HCE exemption as follows:

> The breadth of the HCE exemption is shown by the statement that an employee may be exempt even if "the employee does not meet all of the other requirements" for the underlying administrative, executive, or professional exemption. § 541.601(c). The regulation includes an example of an exempt executive HCE, who can be an "employee [who] customarily and regularly directs the work of two or more other employees." *Id.* Notably, this hypothetical employee meets only one of the elements in the standalone executive exemption. § 541.100. The standalone executive exemption mirrors the standalone administrative exemption: they both have conjunctive elements laying out an employee's duties. Compare *id.,* with § 541.200. While the elements are conjunctive in the standalone exemptions, they are disjunctive when paired with a high salary. § 541.601(c). Analogously, then, employees may be exempt as administrative HCEs even if they do not meet all the elements in the standalone administrative exemption. So an employee could be an administrative HCE if the employee customarily and regularly performed "office or non-manual work directly related to the management or general business operations of the employer," § 541.200(a)(2), even if the employee's duties did not "include[ ] the exercise of discretion and independent judgment with respect to matters of significance," § 541.200(a)(3).[80]

In *Zannikos v. Oil Inspections (U.S.A.), Inc.*,[81] the Fifth Circuit addressed whether an employee performed exempt duties and found that the plaintiffs were not administratively exempt because their primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.[82] But the court concluded that the HCE exemption did apply since plaintiffs' primary duties included a component that met an element of the administrative exemption.[83]

Section 541.201 specifically defines the type of job duties which qualify as administrative:

> (a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work

---

[79] 29 C.F.R. § 541.601(c).
[80] *Smith v. Ochsner Health System,* 956 F.3d 681, 685 (5th Cir. 2020).
[81] 605 F.App'x 349 (5th Cir. 2015).
[82] *Id.*, at 359.
[83] *Id.*, at 360.

performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.[84]

In order to satisfy this element of the HCE requirement, the Court need only find that Plaintiffs customarily and regularly performed one or more of these exempt duties or responsibilities.

Plaintiffs in the instant case regularly performed exempt work under the administrative exemption because they regularly performed "non-manual work directly related to the management or general business operations of the employer or the employer's customers."[85] The phrase "directly related to the management or business operations" references the type of work performed by the employee.[86] Employees who qualify as administratively exempt are those "whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business."[87] The FLSA regulations identify quality control and safety as administrative duties which qualify for the exemption.[88] Also,

---

[84] 29 C.F.R. § 541.201.
[85] 29 C.F.R. § 541.200(a)(2).
[86] 29 C.F.R. § 541.201(a).
[87] 29 C.F.R. §§ 541.201(a), 541.205(a).
[88] 29 C.F.R. § 541.201(b).

an employee who serves as an advisor and consultant to an employer's customers will also qualify for the exemption.[89]

Here, Plaintiffs' work directly relates to the general business operations of Smith's customer.[90] Smith's clients for whom it provided services were primarily oil and gas exploration companies, whose business goal was to produce either oil or natural gas. Plaintiffs, as Reamers, provided services to Smith's clients operations to drill a well that would produce oil and/or natural gas. As previously outlined, Plaintiffs "supervise[d] [Smith's customers'] running of drilling tools offshore," which included monitoring, analyzing, and recording information pertaining to the drilling process. Plaintiffs both communicated with and instructed the Driller on how to properly operate the underreaming tool, ensuring that the Driller operated the tool within the appropriate parameters, and that the Driller did not operate the underreaming tool in a manner that would damage the well that Smith's customer was drilling. Their main job was assisting Smith's clients in drilling operations and ensuring that the Driller operated the tool correctly; they also supported the customer's use of the underreaming tool. These primary duties qualify as safety and control and further indicate that the Plaintiffs served as an advisor and consultant to Smith's employees.

In addition, Plaintiffs' supervision of the rig crew as they operated the underreaming tool qualifies as an administrative function. A similar factual situation was addressed by the Fifth Circuit in the *Zannikos*[91] case, in which the plaintiffs, who were marine superintendents, argued that the district court had erred in finding that they performed non-manual work as they inspected cargo tanks to ensure the absence of contaminants, inspected onshore tank placement to ensure it was correctly placed, inspected loading and discharge equipment, and examined fluid flow through

---

[89] 29 C.F.R. § 541.201(c).
[90] *See Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 373 (7th Cir. 2005) (the court distinguished workers on the production line from those that "spot trouble in advance and decide what steps to take.").
[91] 605 F. App'x 349, 353-54 (5th Cir. 2015).

the line to ensure that no oil was lost during oil transfers. The plaintiff's duties in his supervising customer's operations were found to be an administrative task.[92] In concluding that the plaintiff's primary duties included supervision, quality control, and ensuring compliance with applicable standards, the Fifth Circuit affirmed the district court's ruling that the plaintiff was properly classified as exempt under the HCE.[93]

Plaintiffs rely heavily on the Fifth Circuit case of *Dewan v. M-I, LLC*,[94] and argue that their duties are more similar to the plaintiffs in that case. The Court disagrees for at least two reasons. First, *Dewan* was issued before the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*[95], that revised the standard for FLSA exemptions and held that courts were not to narrowly construe the exemptions; instead, they should be given a fair reading. In *Dewan*, the Fifth Circuit specifically noted that it "narrowly construe[d] [the FLSA's] exemptions in favor of the employee."[96] Second, the analysis in *Dewan* involved the administrative exemption, not the HCE exemption. In *Smith*,[97] the court noticed that this was an important distinction. The Fifth Circuit in *Smith* provided an analysis of the differences between the *Dewan* plaintiff's job duties and the *Zannikos* plaintiff's job duties.[98] Part of the *Zannikos* plaintiff's duties was to "overs[ee] oil transfers, 'monitor the loading and unloading of cargo,' and reported on the transfer's compliance with company policies and national safety standards."[99] In contrast, the plaintiff in *Dewan* "did not oversee 'work performed by the customers' employees, contractors, and equipment.'"[100]

---

[92] *Id*.

[93] *Id*.

[94] 858 F.3d 331 (5th Cir. 2017).

[95] 138 S.Ct. 1134, 200 L.Ed. 2d 433 (2018).

[96] *Dewan*, 858 F.3d at 334.

[97] *Smith*, 956 F.3d 681 (5th Cir. 2020).

[98] *Id*.

[99] *Id*. at 686.

[100] *Id*. at 687.

Accordingly, the *Zannikos* plaintiff performed at least one exempt duty "directly related to assisting with the running or servicing of the business."[101]

In *Hobbs v. EVO, Inc.*,[102] the Fifth Circuit provides additional guidance. There, the district court held that the plaintiff was not exempt under the HCE after a bench trial. The plaintiff provided camera services at the employer's client's well sites including advising the client on the quality of images he could obtain, manually rigging up the camera, directing another contractor on how quickly the camera would be lowered, and operating the camera and informing the [Company Man] what he saw.[103] The court held that the camera technicians were not exempt, in part, because the employer did not identify any example of when they "translat[ed] their observations into advice or recommendations regarding what the client could or should do with the well . . . likely because the recommendations, even non-final ones, were beyond the field engineer's limited expertise.[104] The court noted that providing "some sort of recommendation is a prerequisite for [the] caveat" under the regulations that employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level" as part of their involvement with considering alternative courses of conduct and being involved with the decision.[105]

In the present case, unlike in *Hobbs*, Plaintiffs were not operating the tools but rather were giving advice and recommendations to the client on how to operate the tools. It was their duty to translate the data from the well and give advice and instructions to the driller about the customer's operation and use of the underreaming tool, and to ensure it was being operated under the correct parameters.

---

[101] *Id*. at 686-688.
[102] 7 F.4th 241 (5th Cir. 2021).
[103] *Id*.
[104] *Id*.
[105] *Id*. (quoting 29 C.F.R. § 541.202)

For the exemption to apply, the Court must also find that Plaintiffs performed these exempt duties "regularly and customarily."[106] Pursuant to the FLSA regulations:

> The phrase "customarily and regularly" means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed "customarily and regularly" includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks."[107]

As discussed previously, while on the rig, Plaintiffs' job as Reamers was to "supervise [Smith's customers'] running of drilling tools," which included monitoring, analyzing, and recording information. When Smith's clients operated the underreaming tool, Plaintiffs performed such duties. Accordingly, Plaintiffs regularly and customarily performed an exempt duty.

Plaintiffs challenge whether their primary duties were "non-manual." To qualify for the HCE exemption, the employee's primary duty must include the performance of office or non-manual labor.[108] Plaintiffs' primary duty as a reamer was to "supervise [Smith's customers'] running of drilling tools," which included monitoring, analyzing, and recording information. In fulfilling their primary duties, Plaintiffs communicated with and instructed the Driller on how to properly operate the underreaming tool, ensuring that the Driller operated the tool within the appropriate parameters, and that the Driller did not operate the underreaming tool in a manner that would damage the well that Smith's customer was drilling. Plaintiffs' main job was "assist[ing] [Smith's client] in the drilling operations and mak[ing] sure that [the Driller] is running [the] tool correctly, . . . and supporting [the customer's use of the underreaming] tool ...." These primary duties required Plaintiffs to monitor the various drilling parameters and provide instructions or recommendations to the Driller on adjustments to the drilling parameters in order to maximize the

---

[106] 29 C.F.R. § 541.601(a)(1).
[107] 29 C.F.R. § 541.701.
[108] 29 C.F.R. § 541.601.

operation of the underreaming tool's operation. Monitoring data and providing direction and/or advice is not manual labor.

The limited manual labor that Plaintiffs performed, primarily correctly lining up the tool sections before runs, does not change the result. The mere fact that an exempt employee performs some manual work does not convert that employee to a non-exempt laborer. The HCE exemption turns on whether Plaintiffs' primary duty includes office or non-manual labor. In the context of the HCE exemption, courts routinely hold that performing some manual labor does not negate the exemption when the employee's primary duty is exempt work.[109] Although Plaintiffs performed some manual work, it was never their primary duty.

Based upon the foregoing reasons, the Court finds that there is no genuine issue of material fact that the Plaintiffs qualify as exempt under the HCE exemption. As such, the FLSA claims asserted by each of the Plaintiffs must be dismissed. Based upon the Court's ruling that Smith did not violate the FLSA requirements, the issues relating to Smith's good faith and willfulness are moot.

Accordingly, Smith's Motion for Summary Judgment on the Claims of Jack Venable and Brent Kemp [ECF No. 100] is GRANTED. Plaintiffs' Motion for Partial Summary Judgment as

---

[109] *See Pruneda v. Xtreme Drilling Coil Serv., Inc.*, 2017 WL 3023214 (W.D. Tex. June 20, 2017) (despite the performance of some manual work, the court held that the plaintiffs were exempt HCE employees since their "primary duty was management, as defined by the FLSA's implementing regulations); *Lansford v. RedZone Coil Tubing, LLC*, 2019 WL 4999059 (W.D. Tex. July 2019) (court held that even though the plaintiffs performed manual labor, their primary duty (managing the crew) was exempt and what gave the employer the most value); *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 687 (5th Cir. 2020) (holding that plaintiff was exempt under HCE despite that the plaintiff "spent literal procurement time on the ground, taking [a] team to the airport, going into the operating room, and reporting back to the coordinator and surgeon in Louisiana."); *Goulas v. LaGreca*, No. 12–898, 2013 WL 2477030 at *9 (E.D. La. June 7, 2013), aff'd sub nom. *Goulas v. LaGreca Servs., Inc.*, 557 F. App'x 337 (5th Cir. 2014) (superintendent of horizontal drilling crew was exempt executive "despite the inclusion of manual labor in his regular duties"); *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 695 (S.D. Tex. 2012), aff'd, 755 F.3d 279 (5th Cir. 2014) (coil tubing supervisor was exempt executive even though he "also performed manual labor alongside the [technicians] he supervised while in the field"); *McLendon v. Schlumberger Tech. Corp.*, No. 4:15-cv752-JLH, Dkt. No. 58, at pp. 2-4 (E.D. Ark. Mar. 13, 2018) (Doc. No. 58 at pp. 2-4) (holding that despite the plaintiff spending hours performing manual work, plaintiff was exempt under the HCE, given that his primary duty was planning the job properly and supervising the proper execution at the well site).

to Salary Basis and Smith's Exemption Defenses [ECF No. 119] is DENIED. The Motion for

Summary Judgment as to Issues of Good Faith and Willfulness [ECF No. 99] filed by Smith

International, Inc.; Plaintiffs' Objection to, and Motion to Strike, Smith's Improper Summary

Judgment Evidence [ECF No. 110]; and Motion for Partial Summary Judgment as to Smith's Good

Faith Defense [ECF No. 121] filed by Plaintiffs are each DENIED AS MOOT.  The Clerk is

directed to file a copy of this ruling in the following related and consolidated cases: 6:17-cv-860;

6:19-cv-238; 6:19-cv-239; and 6:19-cv-240. Separate orders will be prepared in each case.

THUS DONE in Chambers on this 24th day of March, 2022.


_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE